UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COVEY RUN, LLC,<br>  a Minnesota limited liability company,<br>      Winkelman Building Corp.<br>      340 South Highway 10<br>      Saint Cloud, Minnesota 56304,<br><br>           Plaintiff,<br><br>v.<br><br>WASHINGTON CAPITAL, LLC,<br>  a Virginia limited liability company,<br>      1100 N. Glebe Road, Suite 1010<br>      Arlington, Virginia 22201,<br><br>ATLANTIS INFORMATION SYSTEMS LLC<br> a Virginia limited liability company,<br>      7400 Beaufont Springs Drive, Suite 300<br>      N. Chesterfield, Virginia 23225,<br><br>JEMEL M. LYLES SR.,<br>      2806 Galeshead Drive<br>      Upper Marlboro, Maryland 20774,<br><br>MELVIN H. SANDERS,<br>      5501 Porsche Lane<br>      Austin, Texas 78749,<br><br>STEVE EVANS,<br>      112 Forrest Street<br>      Manassas Park, Virginia 20111,<br><br>L. GREGORY LOOMAR,<br>      8201 Peters Road, Suite 1000<br>      Plantation, Florida,<br><br>KAREN BAAS,<br>      18097 Delaware Lane 1<br>      Paynesville, Minnesota 56362, | Case No. 1:15-CV-00219 |

1

|  |  |
|---|---|
| MICHAEL BLACKWELL, | ) |
| 3040 Oakshire Street | ) |
| Denton, Texas 76209, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## Complaint

Plaintiff Covey Run, LLC files this action to recover damages arising from Defendants' breach of fiduciary duty, fraudulent activities, and misrepresentations that culminated in the theft of over $1.2 million of Plaintiff's money, which Plaintiff planned to use to develop assisted living housing for seniors in Sheridan, Wyoming. Plaintiff seeks monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## Parties

1.  Plaintiff Covey Run, LLC is a Minnesota limited liability company with its principal place of business located in St. Cloud, Minnesota. The members of Covey Run are: (1) Defendant Atlantis Information Systems LLC; (2) Mathew J. and Shari K. Frisbie of River Falls, Wisconsin; (3) Anders and Cheryl Nelson of River Falls, Wisconsin; (4) Millicent and J. O Stender of Sheridan, Wyoming; (5) Christian and Kathryn Goralski of North Oaks, Minnesota; (6) Aaron John Netter and Leslie A. Bernick Netter of Rice, Minnesota; (7) Augustana Care of Minneapolis, Minnesota; (8) Rollis H. Anderson, as trustee of the Rollis H. Anderson Revocable Trust of St. Cloud, Minnesota; (9) VASSS III, LLC[1]; and (10) CSH II, LLC.[2] Covey Run was

---

[1] The members of VASSS III, LLC are: (1) Duane Schultz, as Trustee of the Duane B. Schultz 2009 Revocable Trust; (2) Andrew Auger; (3) Robbie Schultz; and (4) Jay Vogel, as Trustee of the Trust of Jay R. Vogel. All are residents and citizens of the State of Minnesota.

[2] The sole member of CSH II, LLC is Andrew Auger of St. Cloud, Minnesota.

established to develop real property in order to provide assisted living housing for seniors in Sheridan, Wyoming.

2. Defendant Washington Capital, LLC is a Virginia limited liability company with its principal place of business located in Arlington, Virginia, and the District of Columbia. Washington Capital, LLC, through its representatives and agents, represented that its office addresses are 1010 Connecticut Avenue, 11th Floor, Washington, D.C. 20036; 1050 Connecticut Avenue, N.W., 10th Floor, Washington, D.C. 20036; and 1629 K Street, Suite 300, Washington, D.C. 20006. Upon information and belief, the members of Washington Capital, LLC are Defendants Jemel M. Lyles Sr., Melvin H. Sanders, and Steven (or Steve) Evans.

3. According to the corporate records of the Commonwealth of Virginia, Defendant Atlantis Information Systems LLC is a Virginia limited liability company with its principal place of business located in Cleveland, Ohio. Atlantis Information Systems LLC represented that its office address is 1050 Connecticut Avenue, N.W., 10th Floor, Washington, D.C. 20036. Upon information and belief, the members of Defendant Atlantis Information Systems LLC are Defendants Jemel M. Lyles, Sr. and Steven Evans.

4. Defendant Jemel M. Lyles Sr. (a/k/a J.M. Lyles, Sr.) is a natural person and, upon information and belief, is a resident of the State of Maryland. Lyles is a member and Chief Executive Officer of Defendant Washington Capital, LLC and, upon information and belief, a member of Atlantis Information Systems, LLC.

5. Defendant Melvin H. Sanders is a natural person and a resident of the State of Texas. Defendant Sanders represented to Covey Run and other parties that he was the managing member of Defendant Washington Capital, LLC. Sanders was the primary person who negotiated the relevant transaction on behalf of Washington Capital, LLC and communicated

with Covey Run's principals. He also represented that the principal address of Washington Capital, LLC is 1010 Connecticut Avenue, 11th Floor, Washington, D.C. 20036.

6. Defendant Steve Evans (or Stephen Evans) is a natural person and, upon information and belief, is a resident of the Commonwealth of Virginia. Upon information and belief, Defendant Evans is a member and Vice President of Defendant Washington Capital, LLC and a member and President of Defendant Atlantis Information Systems LLC. Evans signed the majority of the financial paperwork entered into by the parties.

7. Defendant L. Gregory Loomar is a natural person and a resident of the State of Florida. Defendant Loomar is an attorney admitted to practice law in the State of Florida and is a member of the Law Offices of L. Gregory Loomar, P.A. Defendant Loomar agreed to act as escrow agent and, as discussed further below, to hold in escrow the $1.2 million the parties agreed that Covey Run would contribute towards the project in Wyoming.

8. Defendant Karen Baas is a natural person and a resident of the State of Minnesota. Baas represented to Covey Run that she was a broker and was working on behalf of Defendant Washington Capital, LLC.

9. Defendant Michael Blackwell (or Mike Blackwell) is a natural person and a resident of the State of Texas. Defendant Blackwell represented to Covey Run that he was a broker and was working on behalf of Defendant Washington Capital, LLC.

**JURISDICTION AND VENUE**

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 1367(a). The parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has *in personam* jurisdiction over Defendants because, upon information and belief, they have entered into contracts in this district, have communicated in this district in connection with the transactions at issue, and by their acts and omissions in this district they have caused injury to Covey Run.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this district.

## BACKGROUND FACTS

13. As stated above, Covey Run is a business established in 2010 to develop assisted living housing for seniors in Sheridan, Wyoming. Covey Run sought to purchase property in Wyoming for this purpose.

14. Covey Run sought to secure funding to purchase and develop the property. A representative of Covey Run was introduced to Defendants Baas and Blackwell, who represented that they were licensed brokers. Defendants Baas and Blackwell in turn introduced Covey Run to Defendant Washington Capital, LLC and its main representative, Defendant Sanders.

15. These brokers represented to Covey Run that Defendant Washington Capital, LLC was a reputable private equity firm.

16. Washington Capital, LLC thereafter represented to Covey Run that it was a private equity firm created to assist companies in their lending needs and was associated with Lloyd Bancaire of Luxembourg, Standard Charter Bank of the United Kingdom, and Deutsche Bank of Germany. Washington Capital, LLC further represented that it would be able to receive financing from these banks. Covey Run has since learned that Washington Capital, LLC never intended to secure funding for the project from these banks.

17. Washington Capital, LLC and Sanders told Covey Run that they could fund the project in part through a loan of approximately $10 million they would obtain. The total cost of the project was anticipated to be $12 million.

18. In addition, Washington Capital, LLC agreed to invest approximately $660,000 through Defendant Atlantis Information Systems LLC towards the project. Atlantis Information Systems LLC represented that it had the money on hand. Together, the $660,000 and $1.2 million would be used to leverage the $10 million loan to be obtained by Washington Capital LLC.

19. Washington Capital, LLC, through Defendants Marvin Sanders and Karen Baas, represented that the source of the $10 million would be foreign investors, including the banks described above.

20. Washington Capital, LLC presented a completed Investor Commitment Letter and Questionnaire to Covey Run, which represented that Atlantis Information Systems LLC is a Virginia limited liability company and that Steve Evans (who is Vice President of Washington Capital, LLC) was the President of the company. Defendant Evans signed this Letter and Questionnaire. The Questionnaire further noted that Atlantis Information Systems LLC would invest $660,000 in the project.

21. In addition, Washington Capital, LLC drafted and presented a Letter of Commitment to Covey Run, which the parties executed on or about May 8, 2014. Steve Evans signed the Letter of Commitment as Vice President of Washington Capital, LLC, and Andrew Auger as Managing Partner of Covey Run. That Letter of Commitment memorialized the parties' agreement.

22. The Letter of Commitment identified the escrow agent of the $1.2 million as Defendant L. Gregory Loomar of the law offices of L. Gregory Loomar, P.A., in Plantation, Florida. (Letter of Commitment § 2.4.) It provided that Covey Run would wire transfer the $1.2 million to "L. Gregory Loomar, PA Escrow Account" at a Wells Fargo Bank, N.A. bank account. (*Id.* § 2.5.) The parties also agreed that Loomar would hold the monies in "strict" accordance with the terms of the parties' Letter of Commitment (*id.* § 2.5(a)). Upon information and belief, Loomar received a copy of the escrow agreement that was appended to the Letter of Commitment.

23. Under section 2.2 of the Letter of Commitment, the parties agreed that the $1.2 million held in escrow would be "used first for the payments of the project['s] costs" and disbursements would be paid only for those purposes.

24. Consistent with the terms of the Loan Agreement, Covey Run sent the $1.2 million in equity funds by wire transfer to Defendant Loomar in two installments, one payment on July 18, 2014 in the amount of $850,000 and another on August 11, 2014 in the amount of $350,000. Defendant Loomar confirmed in a signed receipt that he had received the wire transfers for the equity money.[3]

25. Thereafter, Washington Capital, LLC presented loan and financial information to Covey Run for it to sign. In particular, Washington Capital, LLC presented a Loan Agreement and other documents concerning the $10 million loan. Defendant Steve Evans signed the loan

---

[3] There is a discrepancy between a receipt that Loomar recently produced for the $350,000 wire transfer and other records concerning the transaction. Loomar's ledger report and Covey Run's records show that Covey Run wire transferred the equity money into Loomar's escrow account on August 11, 2014, but Loomar's recently produced receipt states that he received the money on July 18, 2014.

agreement and other documents on behalf of Washington Capital, LLC. Defendant Marvin Sanders signed certain of the documents as managing member of Washington Capital, LLC.

26.     Under the Loan Agreement, Washington Capital, LLC agreed to loan $10 million to Covey Run through separate payments called "advancements." The first advance was due at closing after Covey Run had satisfied certain pre-requisites, including providing certain loan documents, title insurance, and financial statements to Washington Capital, LLC. Washington Capital, LLC through Defendant Atlantis Information System LLC agreed to provide the $660,000 equity payment so that there would be sufficient funds to close. Neither Washington Capital, LLC, nor Atlantis Information System LLC, provided the funds.

27.     Washington Capital, LLC represented that closing would be accomplished 60 days after the escrow agent received the first equity funds, which would provide for a closing date of mid-to-late September 2014. In addition, Washington Capital, LLC required that Covey Run provide updated feasibility/market studies and an appraisal letter, a Phase I Environmental Assessment, and an ALTA (land) survey. In doing so, Covey Run incurred costs to meet Washington Capital, LLC's requirements. Covey Run also incurred architectural fees and other expenses in anticipation of closing.

28.     The parties scheduled the date for closing on the loan and the purchase of the Wyoming property for November 1, 2014. That closing date was changed a number of times to accommodate a variety of alleged concerns raised by Washington Capital, LLC.

29.     By December 15, 2015, Washington Capital, LLC had refused to close on the transaction and purportedly took issue with its title company's requirements. On this date, it sent notice (through Defendant Sanders) to the title company that it was rescinding the parties' transaction. Sanders, on behalf of Washington Capital, LLC, gave Covey Run three options: (a)

that the parties' agreement be cancelled and the equity funds of $1.2 million be returned to Covey Run; (b) that the funds be left in the escrow account while Sanders searched for another title company to close the deal; or (c) that the equity funds be returned to Covey Run while Sanders located another title company.

30. Covey Run initially selected option (c). Upon the return of the funds, Covey Run would put the funds into a trust account at Bremer Bank in St. Cloud, Minnesota. Washington Capital, LLC, through Atlantis Information Systems LLC, would put the $660,000 into escrow so that all of the equity funds would be available for closing. As discussed *infra*, when the equity funds were not returned to Covey Run after numerous promises and delays, Covey Run demanded the return of the equity funds without any conditions.

31. Between December 15, 2015 and the filing of this Complaint, Washington Capital, LLC sent correspondence to and had conversations with Covey Run on a number of occasions through Defendants Sanders, Baas, and Blackwell to assure Covey Run that it would receive the money. Specifically, these Defendants represented to Covey Run that Washington Capital, LLC was speaking with a person named "Joan" at the Citibank branch office located in Arlington, Virginia, where Washington Capital, LLC has a bank account, and that there were delays in providing the $1.2 million back to Covey Run.

32. In other instances, Washington Capital, LLC represented that its President (Jemel M. Lyles, Sr.), which it only identified in emails as "J," was about to close on another transaction and would return the $1.2 million once this transaction closed.

33. Because Covey Run was concerned about the return of the money, in mid-January 2015, Covey Run asked Washington Capital, LLC to produce evidence that its bank account contained the $1.2 million owed. On January 16, 2015, Defendant Sanders forwarded a letter to

9

Covey Run, purportedly from Citibank, allegedly confirming that Washington Capital, LLC's bank account contained $1.8 million in funds. The letter was dated January 14, 2015, and signed by Steven Jackson, Vice President of Citigroup Private Wealth Banking.

34.     The letter appears to be a forgery. The Citibank logo and letterhead appear to have been cut and pasted to make it appear as though the letter is authentic. In addition, Covey Run confirmed with Citibank that there are no Vice Presidents within the company named Steve Jackson and that the letter did not appear to come from Citibank.

35.     Thereafter, Covey Run demanded that Washington Capital, LLC return the funds to Covey Run by January 20, 2015. Washington Capital, LLC failed to do so, and Covey Run then served Washington Capital, LLC with a formal demand letter dated January 21, 2015, seeking the immediate return of the funds. Despite repeated assurances from Washington Capital, LLC that it would return the funds to Covey Run, to date it has failed to return any of the funds.

36.     In addition, on January 21, 2015, Covey Run's representative wrote to Defendant Loomar asking about the status of the $1.2 million held in escrow. Loomar responded that he did not have any of Covey Run's money in escrow and produced ledger reports showing that he had transferred the money to Defendant Jemel M. Lyles, Sr. on the very same days Covey Run had wire transferred the money to him.

37.     In particular, documents produced by Loomar to Covey Run show that, as to the wire transfer of $850,000 made on July 18, 2014, Loomar immediately disbursed approximately $847,000.00 to Washington Capital, LLC. Loomar retained approximately $2,900.00 as his escrow agent fee.

38. Similarly, as to the wire transfer Covey Run made on August 11, 2014, Loomar wire transferred the money to Washington Capital, LLC that same day, sending approximately $348,000 after taking approximately $875.00 for himself.

39. Loomar received instructions from Washington Capital, LLC in an email dated July 16, 2014 (which pre-dates the wire transfers), from J.M. Lyles, Sr., purporting to be the Chief Executive Officer of Washington Capital, LLC to wire transfer the $1.2 million to a Citibank Account in Arlington, Virginia, and for Loomar to retain certain amounts for his fees.

40. At no time did Covey Run authorize or otherwise consent to the disbursement of funds to Washington Capital, LLC. Loomar failed to contact Covey Run prior to disbursing the funds, and failed to notify Covey Run after he had disbursed the funds. Covey Run only became aware of these disbursements after it sent its January 21, 2015 letter to Loomar.

41. Loomar failed to act with the duty of care required by an escrow agent to safeguard the funds pursuant to the parties' Letter of Commitment and escrow agreement.

42. In addition, Covey Run recently learned that "J" stands for Defendant Jemel M. Lyles, Sr., and that Lyles (along with certain other defendants) was ordered to pay approximately $900,000 in restitution in 2009 in connection with a mortgage fraud scheme committed in the State of Maryland.

43. Covey Run also learned that certain representations concerning Atlantis Information Systems LLC appear to be false. Covey Run amended its Member Control Agreement so that Atlantis Information Systems LLC could become a member of Covey Run. Atlantis Information Systems LLC (through Defendant Sanders, as its representative) assured Covey Run that it had the $660,000 to fund the project, but never provided those funds. Covey

Run understands that this entity does not have such funds and did not intend to contribute money towards the Wyoming project.

44.     In the days leading up to the filing of the complaint, Defendants Washington Capital, Jemel M. Lyles, Marvin Sanders, Karen Baas and Michael Blackwell represented on a number of occasions that they had wired or were wiring the $1.2 million in equity funds to Covey Run. On February 4, 2015, Defendants sent a purported confirmation for a wire they claimed they sent to Covey Run, but excluded the name of the institution that initiated the wire and other critical information that would enable Covey run to track the money.

45.     As of the date of the filing of this Complaint, Covey Run has not received any wire transfer from Defendant Washington Capital, LLC (or its representatives), and Washington Capital, LLC has refused to return the money owed to Covey Run.

## Count I
### (Breach of Contract – Against Washington Capital, LLC)

46.     The allegations of paragraphs 1 through 45 are hereby incorporated by reference.

47.     The parties agreed through various documents that Washington Capital, LLC would lend Covey Run certain monies necessary to develop a senior housing project in Sheridan, Wyoming.

48.     Based on Washington Capital, LLC's representations (as made in writing and orally through its representatives and agents), Covey Run agreed to the Letter of Commitment and transferred $1.2 million of its own money to an escrow account.

49.     Under the parties' agreement, Washington Capital, LLC agreed that the $1.2 million would be used towards the Wyoming development.

50.     Washington Capital, LLC breached these and other provisions of the parties' contracts in accessing the money without the prior written knowledge and consent of Covey Run.

51.     As a result of the breaches of the parties' agreement by Washington Capital, LLC, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in excess of $1.2 million.

52.     Covey Run is entitled to damages, including without limitation, an award of its reasonable attorneys' fees and costs.

## Count II
### (Fraud − Against Defendants Washington Capital, LLC, Atlantis Information Systems LLC, Jemel M. Lyles, Marvin Sanders, and Steven Evans)

53.     The allegations of paragraphs 1 through 52 are hereby incorporated by reference.

54.     As discussed above, Covey Run entered into a Letter of Commitment in which Washington Capital, LLC made a number of misrepresentations about itself and the loan funds it would provide to Covey Run. Based on the misrepresentations made by Washington Capital, LLC through its representatives (Defendants Lyles, Evans, and Sanders) that Washington Capital, LLC was a reputable private equity firm, that it had sufficient funds on hand, and that it would be able to obtain a sizeable loan, Covey Run entered into the Letter of Commitment and other agreements.

55.     Under the Letter of Commitment, Covey Run agreed to transfer $1.2 million of its money into an equity escrow for use towards the costs of the development in Wyoming. Washington Capital, LLC represented that Defendant Loomar would hold this money in escrow and that the money would be used to leverage the $10 million loan. Covey Run relied on these representations to its detriment.

56.     Washington Capital, LLC (through Defendant Lyles) improperly and fraudulently accessed the equitable funds. Defendant Loomar disbursed the money to Defendants Washington

Capital, LLC, Lyles, Sanders, and Evans without Covey Run's consent and in violation of the parties' agreements, including the Letter of Commitment.

57. Washington Capital, LLC (with the assistance of the other Defendants) never intended to loan the funds towards the project.

58. In addition, Washington Capital, LLC represented that it would contribute $660,000 of its own funds through Defendant Atlantis Information Systems LLC. It represented that it had the money on hand to contribute to the project. This representation was not true. Defendants Washington Capital, LLC, Atlantis Information Systems LLC, Lyles, Sanders, and Evans used this purported contribution as one mechanism to induce Covey Run to enter into the transaction and put the $1.2 million into escrow. Had Covey Run known the true facts and the Defendants' fraudulent intent, it would not have agreed to provide the funds or to amend its member agreement to accept Defendant Atlantis Information Systems LLC as a member of Covey Run.

59. Further, after Covey Run demanded the return of its money, Defendants presented a forged letter purportedly from Citibank in which Washington Capital, LLC represented, falsely, that it had $1.8 million in its account.

60. Had Covey Run known that the representations of Defendants were false, it would not have entered into the Letter of Commitment or other agreements with Washington Capital, LLC and Atlantis Information Systems, LLC.

61. As a direct and proximate result of Defendants' fraudulent acts, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

### Count III
**(Negligent Misrepresentation – Against Defendants Karen Baas and Michael Blackwell)**

62. The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63. Defendants Baas and Blackwell negligently represented to Covey Run that Defendant Washington Capital, LLC was a reputable private equity firm with ties to major foreign financial institutions (namely, Lloyd Bancaire of Luxembourg, Standard Charter Bank of the United Kingdom, and Deutsche Bank of Germany). They further represented that these foreign financial institutions would fund the Wyoming project.

64. Defendants Baas and Blackwell knew or should have known that these representations were false.

65. Defendants Baas and Blackwell intended or should have recognized that Covey Run would likely be imperiled by action taken in reliance upon their misrepresentations.

66. Covey Run relied on the misrepresentations of Defendants Baas and Blackwell to its detriment. Had Covey Run known the true facts, it would not have entered into the Letter of Commitment or other agreements with Washington Capital, LLC and Atlantis Information Systems, LLC, and would not have transferred $1.2 million in funds for the project.

67. As a direct and proximate result of Defendants Baas' and Blackwell's negligent misrepresentations, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

### Count IV
**(Conversion – Against Defendants Washington Capital, LLC, Jemel M. Lyles, Marvin Sanders, and Steven Evans)**

68. The allegations of paragraphs 1 through 67 are hereby incorporated by reference.

69. As discussed in detail above, Defendants Washington Capital, LLC, Lyles, Sanders, and Evans induced Covey Run to enter into the transaction. These Defendants misappropriated the funds that Covey Run had deposited into an escrow account.

70. These Defendants diverted the funds (the $1.2 million) with an intention to permanently deprive Covey Run of such funds.

71. Having misappropriated these funds, Defendants are liable to Covey Run for the full amount of the funds plus punitive damages.

72. As a direct and proximate result of Defendants' acts, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million, exclusive of costs and attorneys' fees.

## Count V
### (Breach of Fiduciary Duty – Against Defendant L. Gregory Loomar)

73. The allegations of paragraphs 1 through 72 are hereby incorporated by reference.

74. An escrow agent has a duty to exercise ordinary skill and diligence in handling escrowed funds. An escrow agent is a trustee of all parties and has contractual and fiduciary duties to all parties to the escrow arrangement.

75. Defendant Loomar agreed to act as escrow agent for the parties and to hold in escrow the $1.2 million Covey Run had deposited.

76. Defendant Loomar knew that he was acting as escrow agent for the parties and that he was required to act with the requisite duty of skill and care to safeguard the funds deposited in escrow.

77. Defendant Loomar acknowledged in receipts that he received the $1.2 million in equity funds from Covey Run.

78. Defendant Loomar, however, disregarded his duty of skill and care in wrongly and negligently disbursing the money to Defendants Washington Capital, LLC, Lyles, Sanders, and Evans without appropriate authorization and in violation of the parties' agreement.

79. After Covey Run had deposited the money into Defendant Loomar's care as escrow agent for the parties, he immediately transferred the money to Defendants Washington Capital, LLC, Lyles, Sanders, and Evans, although the conditions precedent for disbursement had not been met.

80. In addition, at no time did Defendant Loomar seek Covey Run's consent to disburse the equitable funds to these Defendants. He also failed to alert Covey Run of the disbursements he made.

81. As a direct and proximate result of Defendant Loomar's breach of his fiduciary duty, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

## **Prayer for Relief**

WHEREFORE, Plaintiff Covey Run prays that this Court:

a. Grant judgment to Covey Run and against all Defendants based upon the claims set forth above;

b. Award Covey Run compensatory damages against all Defendants, including without limitation, for the claims relating to the misappropriation of $1.2 million as set forth above;

c. Award Covey Run punitive and exemplary damages against each of the Defendants, jointly and severally, as permitted by law;

d. Award Covey Run prejudgment interest;

  e. Award Covey Run its costs and attorneys' fees incurred in connection with this action pursuant to the parties' agreements and under applicable law; and

  f. Award Covey Run such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Eric L. Yaffe
Eric L. Yaffe (Bar No. 439750)
Iris Figueroa Rosario (Bar No. 477009)
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
The Watergate – Suite 700
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel: (202) 295-2200
Fax: (202) 295-2250
eric.yaffe@gpmlaw.com
iris.rosario@gpmlaw.com

Dated: February 12, 2015  *Attorneys for Plaintiff*